MORGAN, J.,
Dissenting.
Plaintiff sued to recover a judgment against the defendant on a cognovit promissory note, executed by the defendant to the plaintiff as payee, for $2450.00 being the balance of the purchase price of a house and lot sold by the plaintiff to the defendant for $15,500.00 located on Jackson Road in More-land Hills, Cuyahoga County, Ohio.
By way of answer and counterclaim, the defendant alleged that at the time of and prior to the purchase of the said house and lot by the defendant, the plaintiff, to induce the defendant to purchase the property, falsely represented and warranted to the defendant that the property had an ample water supply by way of a well supplied ■by a spring, on the premises, sufficient and fit for all household purposes; whereas in fact the water supply was not ample, which fact was known to the plaintiff or ought to have been known by him; that said well became dry in about ten days after defendant’s occupancy of the house and thereafter the property purchased had no water supply whatsoever.
That the plaintiff, after the well had gone dry, temporarily furnished water in containers and dug another well by which a sufficient volume of water was obtained, but it was and is salty and unfit for use for household purposes. That there is no way to supply water for defendant’s household except by connecting with the water system of the City of Cleveland more than two miles away, or with that of Chagrin Falls more than a mile and a quarter away, both of which methods are too costly to be practicable.
That the defendant relied on these representations and warranties and that by reason of the false representations and breach of warranty the defendant has been damaged in the sum of $5,000.00.
The defendant also counterclaimed for damages in the sum of $335.00 for a leaky roof and for $300.00 for a defective sanitary system, by which sewer gas was permitted to escape into the house.
For his reply and answer to defendant’s counter-claim, plaintiff admitted that a/fter the water supply failed the defendant, the plaintiff temporarily and voluntarily furnished water in containers to defendant, provided a cistern and caused another well to be dug by which a sufficient supply of water by volume was obtained and further alleged that if the water system and well on the premises became dry about ten days after the occupancy of the house, the condition was only a temporary one because of a great deficiency of rain in the previous summer and fall.
Plaintiff also denied that he made any representations and warranties as stated by the de *305 Jendant, and further alleged that the premises were sold and conveyed under a certain written agreement of October 3, 1939, which provided that the property was •sold “together with all buildings and appurtenances now thereon in their present condition.”
The case came on for trial and counsel for the defendant in his opening statement to the jury, repeated and enlarged on the allegations in defendant’s answer and counter-claim. He said to the jury that Mr. and Mrs. Christopher, who are the owners of defendant company and represented it in this transaction, while driving along Jackson Road were attracted by plaintiff’s house and talked to the plaintiff and his real estate agent about purchasing it. That having Jive in the family including two children, they asked plaintiff particularly a number of times about the water supply and the plaintiff replied to them that the spring on the premises was inexhaustible and was ample for all household purposes; that the house was personally constructed and supervised by plaintiff and that it was a well built house and everything that went into it was No. 1.
That the Christophers took possession of the house and within ten days after occupancy found that they had no water at all. When they . complained to the plaintiff he first dug a well until he got into the blue clay and found no water. He made that excavation into a cistern to receive roof water and drilled another well to • a depth of nearly 100 feet and found water, but this water is salty and cannot be used for household purposes. The result is that the Christophers have a bountiful supply of salt water which they cannot use for household purposes.
Counsel further stated to the jury that previous to the sale the plaintiff knew of the insufficiency of the water supply in the whole district in which the house and lot are located and had been told by a neighbor that “there is no water here.”
That the only way the Christophers have of getting drinking water is by purchase of water in carboys or by transporting it in jugs from Chagrin Falls. That the difference in the value of the house and lot in their present condition and what they would have been worth if the water supply had been as represented, is $5,000.
Counsel’s opening statement also contained a statement as to the evidence he would offer regarding the defects in the sanitary system and in the roof.
After the opening statements were completed, Mrs. Christopher was placed on the stand as defendant’s first witness. She testified to meeting Mr. Drew, the plaintiff, and also Mr. Stilwell, the representative of the real estate firm, The A. B. Smythe Company, which had the house and lot for sale. After referring to a few preliminary matters, she testified that Mr. Drew, the vendor and plaintiff, said to her “the construction was the very best and I particularly mentioned water — .” Before she could proceed further with the answer, counsel for plaintiff objected and the court called for the written agreement of sale between the parties, dated October 3, 1939. This agreement is on the printed form of The A. B. Smythe Company, plaintiff’s agent; following the blank space for the description of the property appear the printed words: “Together with all buildings and appurtenances now thereon in their present condition.”
After examining the document the trial court stated to defend *306 ant’s counsel that in the court’s opinion he was attempting to introduce oral evidence to vary the terms of the written agreement inasmuch as the defendant had purchased the building and appurtenances “in their present condition.” Counsel for defendant then explained in more detail the evidence he proposed to offer as to plaintiff’s representations as to the sufficiency of the water supply. He offered to prove that the Christophers at different times before the purchase, in conversation with plaintiff, had stressed the importance of the water supply and called plaintiff’s attention to the fact that the Christophers have two small children in the family and that they did their own washing. That Mr. Drew had repeatedly assured the Christophers of the sufficiency of the water supply and that the defendant was induced to purchase the property in reliance on these representations.
Counsel for the defendant further stated to the court that a witness would testify that he had told Mr. Drew previously that there was no water in the valley and that the spring so-called was merely seepage and would become dry. That this witness had tried to dig for water on a neighboring property and failing to obtain any he had to pipe water from the Chagrin River.
Counsel for defendant further stated to the court that the defendant would show that in the whole district in which this property is located, when anyone digs about 100 feet he gets into a strata of shale in which there is no water; that sometimes salt water is obtained which is over an old ocean salt bed which would never cease to be salt water. That the defendant would produce experts to testify that no water can he obtained on the property for drinking purposes from any well that might be dug.
That the Christophers relied wholly on the representations of the plaintiff as to the sufficiency of the water supply and that they would not have purchased the house and lot “except for the assurances that there was and would be sufficient water for all household purposes.”
After further argument the trial court held that the defendant purchased the buildings and appurtenances on the property according to the written contract “in their present condition” and that the evidence offered by the defendant constitutes an attempt to vary or alter the written agreement. The court then granted plaintiff’s motion for a finding in his favor on the pleadings, the opening statement of counsel and the evidence, which included the contract of sale. The cross-petition was dismissed and the original cognovit judgment on plaintiff’s note was restored as of February 17, 1940.
The only question before this Court is whether the trial Court erred in halting the trial at its beginning and in holding that the proffered evidence of defendant was not admissible because it was an attempt to vary the terms of a written instrument.
It was the position of the trial court that the defendant purchased “the buildings and appurtenances now thereon in their present condition” and that therefore no evidence was admissible as to representations made by plaintiff in order to induce the purchase.
“ ‘Appurtenances’ are defined as things belonging to another thing as principal and which pass as incidents to the particular thing.” 27 R. C. L. 431.
*307 If the defendant herein were complaining about the construction of the well on the premises or about the character of the pumping apparatus, it might well be argued that such things would be considered as “appurtenances” to the land or as “things” which the defendant agreed to accept “in their present condition.” Statements as to the character and sufficiency of the water supply are not statements as to particular things and appurtenances and, in my judgment, such statements should not be rejected because the defendant, by the written contract, agreed to accept “the buildings and appurtenances in their present condition.”
If there is any ambiguity in the contract on this point it should be construed against the plaintiff on the principle that “a written contract should, in case of doubt, be interpreted against the party who has drawn the contract.” 6 R. C. L. 854. The words, “in their present condition” appear in the printed form of the contract of sale used by the plaintiff’s agent.
Representations made to induce a party to enter into a contract are not generally held to be within the parol evidence rule.
“The courts have gone to great length in allowing parol evidence which formed an inducement to the contract to be shown. It has been stated generally that a parol agreement operating as an inducement to a written agreement is admissible in evidence.” 17 O. Jur. 537.
Fraudulent representations to Induce the making of a contract may be shown even when the contract of sale contains the express provisions that only conditions incorporated therein shall be binding. See note in 75 A. L. R. page 1025. The contract in the instant case contains no such provision.
Misrepresentations made to induce the making of a contract may be the basis of an action even, when the representations are honestly made.
“When a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, it is then only necessary to prove that the representations were material and substantial affecting the identity, character or subject matter of the contract; that it was false; that the other party had a right to rely upon it, and that he was induced by it to make the contract, in order to entitle him to relief either by rescission of the contract or by recoupment in a suit brought to enforce it.” 40 O. Jur. 931.
The principal case in Ohio on this question is to the same effect. Gleason v Bell, 91 Oh St 268.
In Williston on Contracts, Vol. 5, page 4212, the learned author states:
“There is an increasing tendency to impose liability upon one whose false statements although innocently made, have induced another to act to his detriment.”
If this case had been permitted to proceed to a conclusion, it might then have appeared from the evidence that the plaintiff had only expressed an opinion as to the water supply or an expectation and a hope as to the future. The allegations of the petition and the proffer of evidence by defendant’s counsel are not of this character. The defendant alleged and offered to prove that there was an insufficiency of the water supply in the *308 whole district, which would include the house and lot purchased, and that the plaintiff knowing of this insufficiency in the water supply had concealed the fact from the defendant and had represented the exact contrary to be true. Such are statements of knowledge of an existing fact, and not the expression of a mere opinion.
That such representations were made is shown by the construction placed upon the contract by the plaintiff when the water supply failed. The plaintiff supplied water in containers for a time and then dug two wells, one of which he converted into a cistern, and the other provided only salt water, unfit for household purposes. While the action of the plaintiff in this respect was quite commendable, it is not likely that he would have made all of this expenditure if he did not consider that he was under a legal obligation to make good on his representations made to the defendant as to the sufficiency of the water supply.
Defendant’s causes of action based on an alleged leaky roof and a defective sanitary system, differ from defendant’s counter-claim based on the failure of the water supply, in that the roof of the house and its sanitary system are clearly part of the “buildings and appurtenances” which, according to the printed words in the contract of sale, the defendant purchased “in their present condition.” If the defendant is absolutely barred by these words in the contract, notwithstanding any representations, however false and fraudulent, that may have been made by the plaintiff to induce the purchase, or irrespective of the nature of the alleged defects in the building and its appurtenances, then the court was justified in withdrawing the second and third causes of action of defendant’s-counter-claim from the jury.
In my opinion, however, the words “in their present condition” do not constitute such an absolute bar. The exhaustive note in 75 A. L. R. 1025, above referred to, shows that by the great weight of the authority, evidence as to false and fraudulent representations to induce a party to enter into a contract may be admitted even when the written contract contains a statement that all representations and conditions are to be found in the contract.
If the alleged defects are such that they can be seen on any reasonable inspection of the premises,, the purchaser cannot recover damages for such defects. If the defects-were latent and hidden and a reasonably careful inspection by the purchaser would not have revealed them, a different question is presented. If in such a case the purchaser offers evidence going to show that the vendor made false and fraudulent representations to induce action by the purchaser and that he, relying thereon, entered into the contract to his detriment, it is my opinion that a jury question is' presented as to such latent and hidden defects, notwithstanding the printed words, “in their present condition” appearing in the written contract.
The defendant in this case was not permitted to introduce any evidence to sustain any of his counter-claims. It is my opinion that the trial court erred in this and in withdrawing defendant’s case from the jury, on the ground that the evidence offered by the defendant to sustain its counterclaims, could not be received because such evidence was in violation of the parol evidence rule.